UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE SIDING AND INSULATION CO., f/k/a THE ALUMINUM SIDING & INSULATION CO., INC., an Ohio corporation individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) ) | Case No.1:11CV1062 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| COMBINED INSURANCE GROUP, LTD., INC., | ) ) ) | |
| Defendants. | ) | |

Before the Court is Plaintiff's Motion for Summary Judgment (ECF # 37) in this class

action lawsuit arising out of 7,880 alleged violations of the Telephone Consumer Protection Act

(the "TCPA"). Defendant has responded to the Motion for Summary Judgment, and Plaintiff has

replied.[1] Thus, the Motion is ripe for consideration. For the reasons stated below, Plaintiff's

Motion is GRANTED IN PART and DENIED IN PART.

---

[1]Plaintiff, The Siding and Insulation Co., f/k/a the Aluminum Siding & Insulation Co., Inc, is an Ohio corporation located in Cleveland, Ohio. Defendant Combined Insurance Group Ltd., Inc. is an insurance business located in Lansdale, Pennsylvania.

## I. BACKGROUND AND STATEMENT OF FACTS[2]

In relevant part, the TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Faxed advertisements may not give rise to liability under the TCPA if: (1) the faxes were sent within the context of an established business relationship; (2) the recipient's facsimile number was voluntarily communicated through the established business relationship or voluntarily disclosed for public distribution; and (3) the faxes contained a specific notice set forth in the TCPA. 47 U.S.C. § 227(b)(1)(C)(i), (ii)(I)(II), (iii).

The TCPA creates a private right of action for liquidated damages in the amount of $500 per violation, or actual monetary loss, whichever is greater. 47 U.S.C. § 227 (b)(3)(B). The TCPA also provides that a court may treble the damages award if it finds that the defendant's violations were committed "willfully or knowingly." 47 U.S.C. § 227 (b)(3)(C).

Here, Plaintiff seeks statutory damages on behalf of a class, claiming that Defendant successfully sent 7,883 unsolicited faxed advertisements for Defendant's insurance products and services to facsimile numbers bearing Ohio area codes. On April 24, 2012, the Court granted Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23, certifying a class defined as, " All persons who were successfully sent one or more faxes on April 17, 2006 or April 18, 2006, about an 'Ohio grand opening' for InsureDirect.com stating,'We insure everybody . . . regardless of driving record!' and offering to 'quote all 30 companies with one call.'" Having received three requests for exclusion from the class, Plaintiff seeks statutory damages in favor of the class for 7,880 violations of the TCPA, for a total amount of

---

[2]When considering Plaintiff's Motion for Summary Judgment, the Court regards the facts in a light most favorable to Defendant, as is required under Federal Rule of Civil Procedure 56.

$3,940,000.00 (7,880 alleged violations times $500 per violation). Plaintiff also submits that the Court should find that Defendant's faxes were sent "willfully or knowingly" and treble the statutory damages to $1500 per fax, which results in damages in the amount of $11,820,000 (7,880 alleged violations times $1,500 per violation).

Defendant does not contest many of the facts alleged in the Complaint. Defendant admits that it hired a fax broadcaster named Business to Business Solutions ("B2B") to advertise Defendant's insurance business. B2B was a d/b/a of a woman named Caroline Abraham who operated a fax broadcasting business in Brooklyn, New York.[3] B2B worked with a Romanian company known as Macaw, and acted as their agent in the United States.

B2B contacted Defendant to offer fax advertising services. B2B created a fax advertisement with information from Defendant's website. Defendant authorized B2B to send

---

[3]In *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir.2013), the Seventh Circuit gave some insight into the extensive factual backdrop of numerous class actions filed under the TCPA.

Caroline Abraham and B2B are in the center of many of the controversies. As one court noted, Ms. Abraham functioned as a modern-day "Typhoid Mary" in the small business communities in which she operated. *Compressor Engineering Corp. v. Mfrs. Financial Corp.*, 292 F.R.D. 433, 436 (E.D. Mich. 2013) (discussing *Reliable Money Order, Inc.*, 704 F.3d 489). B2B contracted with businesses to send advertisements via facsimile. Advertisers would pay a fee, and B2B would send the ad to hundreds of fax numbers purchased from another party (a practice known as "fax-blasting"). Ms. Abraham never obtained the fax recipients' permission to send them the advertisements. As the Seventh Circuit explained, Ms. Abraham and B2B now sit in the middle of scores of lawsuits under the TCPA. *Reliable Money Order*, 704 F.3d at 491.

Anderson + Wanca and Bock & Hatch, class counsel here, are two Chicago area law firms that specialize in representing plaintiffs in class action lawsuits under the TCPA. *Id.* at 491. The Seventh Circuit observed, "Because plaintiffs may enforce the statute via class action and because a single advertisement is often faxed to hundreds—if not thousands—of phone numbers, suits under the Act present lucrative opportunities for plaintiffs' firms." *Id.*

that fax advertisement on its behalf.  Defendant paid B2B approximately $470 via "check by phone" to send a fax advertisement.

Defendant does not dispute that B2B successfully sent Defendant's advertisement to 7,883 fax numbers with Ohio area codes.  The advertisement was faxed over two days, April 17 and 18, 2006.  A successful transmission to Plaintiff's fax number was made on April 18, 2006. Neither B2B nor Defendant obtained express invitation or permission to send Defendant's advertisement by fax to any of those targets.  Defendant admits that the faxes were not solicited by the recipients.

While Defendant admits that B2B sent 7,883 faxes to Ohio business owners, Defendant claims that it only gave B2B authority to send 50 such fax transmissions to Ohio fax numbers.[4] Defendants claims that B2B exceeded its authority by sending faxes to more than 50 Ohio numbers.

## II. LEGAL STANDARD

Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its

---

[4]Defendant apparently claims to have authorized only 50 faxes in each of the 50 states.

4

case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted).  Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87.  The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. ANALYSIS

### A.    TCPA And Vicarious Liability

As discussed, the TCPA makes it unlawful to "use any telephone facsimile machine, computer, or other device to **send**, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added).  The Federal Communications Commission ("FCC") includes in the definition of "sender," the person "on whose behalf" a fax broadcaster (like B2B) sends a fax.  47 C.F.R. § 64.100(f)(10).  Courts have relied upon the FCC's interpretation to conclude that defendants cannot escape liability simply by hiring an independent contractor to transmit unsolicited facsimiles on their behalf. *See Glen Ellyn*

*Pharmacy v. Promius Pharma, L.L.C.*, No. 09 C 2116, 2009 WL 2973046, at *4–5 (N.D.Ill. Sept.11, 2009). Indeed, even if a fax broadcaster is involved, the "entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12407-08, 34-35 (July 26, 1995). Thus, summary judgment against a defendant business cannot be averted simply by arguing that a third party sent the faxed advertisement. Defendant here appears to concede this point.

Defendant also concedes that liability under the TCPA is strict. Thus, the Court finds that there no factual basis to contest liability under the TCPA for the 50 faxes that Defendant admits to have authorized B2B to send in Ohio.

Although Defendant cannot avoid vicarious liability for the 50 faxes it authorized, Defendant claims that the existence of such vicarious liability for the remaining 7,830 faxed advertisements turns on whether an agency relationship existed between Defendant and B2B with respect to those faxes. Indeed, Plaintiff acknowledges that in *In re Dish Network, LLC, et al.*, 28 F.C.C.R. 6574, 2013 WL 1934349 (May 9, 2013), the FCC determined that federal common law agency principles apply to determine vicarious seller liability for violations of TCPA section 227(b). *See Dish Network*, 28 F.C.C.R at 6591-92.

In *Dish Network*, the FCC established that liability under section 227(b) includes circumstances in which the defendant's agent has apparent authority, in addition to actual authority or ratification. *Id.* If Defendant's assertion that it authorized no more than 50 faxes to Ohio numbers is viewed in a light most favorable to Defendant, there clearly is an issue of fact as to whether B2B had actual authority to send additional faxes. Plaintiff did not argue ratification in its motion for summary judgment. Thus, the question now before the Court is whether a

6

genuine issue of material fact exists as to whether Defendant's agent, B2B, had apparent authority

to send more than 50 advertisements via facsimile in Ohio.

Apparent authority is "created by a person's manifestation that another has authority to act

with legal consequences for the person who makes the manifestation, when a third party

reasonably believes the actor to be authorized and the belief is traceable to the manifestation."

RESTATEMENT (THIRD) OF AGENCY: CREATION OF APPARENT AUTHORITY § 3.03; *see also*

*Master Consol. Corp. v. BancOhio Nat'l Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817, 822 (1991).

"Apparent authority is present only when a third party's belief is traceable to manifestations of

the principal." *Id.* § 3.03 cmt. b. Thus, unlike actual authority, apparent authority does not depend

upon any manifestation from the principal to the agent, but rather from the principal to the third

party. In this regard, "[t]he apparent power of an agent is to be determined by the act of the

principal and not by the acts of the agent ... [.]" *BancOhio Nat'l Bank*, 61 Ohio St.3d 570, 575

N.E.2d at 822 ; *accord Logsdon v. Main–Nottingham Inv. Co.*, 103 Ohio App. 233, 141 N.E.2d

216, 223 (1956). Thus, a court's focus during an inquiry into the existence of apparent authority

must be on the acts of the principal and whether those actions manifested a conveyance of

authority to the agent. *See Cupac, Inc. v. Mid–West Ins. Agency, Inc.*, 626 F. Supp. 559, 561

(S.D. Ohio 1985) (noting the "touchstone of apparent authority is the principal's conduct toward

a third party and not the agent's") (citing *Logsdon*, 141 N.E.2d at 223).

In this case, a disputed issue of material fact exists on the question of B2B's apparent

authority to send 7,830 of the faxes at issue. Defendant claims that B2B was not authorized to

send more than 50 facsimiles on Defendant's behalf in Ohio. If the finder of fact is persuaded

by Defendant's evidence on this point, then Defendant has not made any manifestation – direct or

indirect – to 7,830 of the facsimile recipients. Without a manifestation by Defendant to the

7

recipients, B2B had no apparent authority to act. *See Bridgeview Health Care Ctr. Ltd. v. Clark*, 08 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013) (material factual dispute on whether B2B exceeded authority by sending faxes outside certain authorized geographical range); *Savanna Group, Inc. v. Trynex, Inc.*, 10 C 7995, 2013 WL 4734004 (N.D. Ill. Sept. 3, 2013) (question of material fact regarding whether B2B exceeded agency authority by sending faxes to numbers not on a list provided by Defendant).[5]

One district court aptly explained the logic behind these limitations on apparent authority. That court stated:

> The logic of this rule is perhaps best illustrated by an extreme hypothetical: if the principal authorized the agent to send a single fax advertisement, and the agent proceeded to send one million fax advertisements, **holding the principal liable for every fax advertisement on the basis of the actions of the agent alone would be manifestly unjust**. Requiring some action of the principal is a necessary limit on vicarious liability in the apparent agency context.

*Bridgeview Health Care Cntr. Ltd. v. Clark*, 09 C 5601, 2013 WL 4495221 at *4 fn. 3 (N.D. Ill. Aug. 21, 2013)(emphasis added). Accordingly, summary judgment on liability under the TCPA is denied respecting 7,830 of the facsimiles at issue.

### B.    Damages

#### 1.    Liquidated Damages

As previously discussed, the TCPA creates a private right of action for liquidated damages in the amount of $500 per violation, or actual monetary loss, whichever is greater. 47 U.S.C. § 227 (b)(3)(B). Plaintiff requests $500 per violation. The Court has granted partial summary judgment to Plaintiff with respect to 50 unauthorized faxes that were sent in violation

8

of the TCPA.  Accordingly, Plaintiff is entitled at this time to a judgment in the amount of $25,000.00 (50 faxes multiplied by $500).  For the reasons discussed above, a dispute of material fact remains regarding whether Plaintiff, on behalf of the class, is entitled to damages for the remaining faxes at issue.

### 2.    Treble Damages

A knowing or willful violation of the TCPA **may** entitle a plaintiff to treble damages.  47 U.S.C. § 227(b)(3)(C) (emphasis added).  Willful means "conscious and deliberate commission or omission . . . irrespective of any intent to violate []."  47 U.S.C. § 312(f).  The statute does not require the imposition of treble damages.  Rather, a court may treble damages in its discretion.

The Court has held that issues of material fact remain outstanding.  Any ruling on whether an award of treble damages is warranted is premature at this time.  The Court denies Plaintiff's request for summary judgment on this issue.

## IV.  CONCLUSION

For the reasons discussed herein, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  Plaintiff is entitled to judgment as a matter of law with respect to 50 faxes sent to Ohio numbers in violation of the TCPA.  Under the TCPA, Plaintiff, on behalf of the class, is entitled to damages in the amount of $25,000.00 for the 50 violations.  Summary judgment is denied with respect to the remaining faxes and with respect to Plaintiff's request for treble damages.

**IT IS SO ORDERED.**

_____
**DONALD C. NUGENT**
**UNITED STATES DISTRICT JUDGE**

_____
**DATE**   April 17, 2014

9